ELIZABETH BASYE, Respondent, v. KANSAS CITY, PITTSBURG & GULF RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, March 10, 1896.

1. **Railroads:** KILLING STOCK: ATTORNEY'S FEE. There is no law for the allowance of an attorney's fee when judgment is recovered against a railway company, under section 2611 of the Revised Statutes, for double damages for the killing of stock. The provision of that section for the allowance of an attorney's fee has reference only to successful actions by landowners for the cost of fences, etc., constructed by them in accordance with the statute.

2. **Witnesses:** COMPETENCY OF HUSBAND TO PROVE HIS AGENCY FOR HIS WIFE. *Held*, BOND, J., *dissenting*, that, when a husband is not a substantial party to an action by his wife, he is not a competent witness to establish his agency for her in order that he may testify to matters relating to the agency.

3. **Instructions**: CURING GENERALITY OF EXPRESSION IN ONE BY REFERENCE TO ANOTHER. When two instructions are directed to the same proposition, a generality of expression in one may be qualified by the more particular language of the other.

*Appeal from the Newton Circuit Court.*—HON. J. C. LAMSON, Judge.

REVERSED IN PART AND AFFIRMED IN PART.

*John T. Sturgis* and *Trimble & Braley* for appellant.

(1) The plaintiff was not entitled to any attorney's fee in this case, and the court erred in allowing one. The statute manifestly does not give a plaintiff double damages for killing or injuring stock and allow an attorney's fee in addition, as was done in this case. Such was not the legislative intent. R. S. 1889, secs. 2611, 2613; Laws, 1885, page 89; *Dart v. Bagley*, 110 Mo. 42, 51; *State v. Diveling*, 66 Mo. 375. This statute is penal, and should be strictly construed. *Briggs v. Railroad*, 111 Mo. 168; *Perkins v. Railroad*, 103 Mo. 52. (2) The plaintiff's husband was not a competent witness for plaintiff as to the manner and circumstances of the killing and injury to the stock and overflow of the land. He was not her agent and could not be in those matters. The husband's competency as a witness in suits by his wife as plaintiff, is by the statute confined to cases "when such suit or proceeding is based upon, grows out of, or is connected with, any matter of business, or business transaction where the transaction or business was had with or was conducted by such married man as the agent of his wife." It is as her agent only that he is competent. The matter must be a "business transaction or matter of business"—a subject of agency before he can be her agent. R. S. 1889, sec. 8922; *Paul v. Leavitt*, 53 Mo. 595, 597; *Joice v. Branson*, 73 Mo. 28; *Flannery v. Railroad*, 44 Mo. App.

396, 398; *White v. Chaney*, 20 Mo. App. 389, 393. (3) Plaintiff's instruction number 3 is not correct. This instruction authorized damages for the overflow of "any part of plaintiff's lands," if "plaintiff was injured thereby," or if plaintiff "was damaged by loss of her potato crop." The issue of damage to any part of the land by overflow was not justified by the evidence, and was indefinite and misleading to the jury. *McKee v. Railroad*, 49 Mo. App. 174, 183; *Hayler v. Owens*, 61 Mo. 270; *Hawes v. K. C. Stock Yards Co.*, 103 Mo. 60, 66.

*Lyman W. White* for respondent.

BOND, J.—The plaintiff sued the defendant railroad company in a justice's court on a statement embracing four counts. The first, second, and fourth counts are for double damages for killing and injuring stock under the double damage act, section 2611 of the Revised Statutes. The third count is for damages for obstructing a running stream of water and the consequent overflow of plaintiff's land and destruction of her growing potato crop. The case came to the circuit court on defendant's appeal, and, on trial anew in that court before a jury, the plaintiff got a verdict for $10 on the first count and $5 on the fourth count, the jury finding for defendant on the second count, these counts being for injury to stock. The plaintiff also had judgment for $13 on the third count for overflow of her potatoes. The plaintiff filed her motion to double the damage on the first and fourth, or double damage, counts of her petition, which the court sustained and entered judgment accordingly.

On this state of facts, and after the foregoing proceedings were had, the plaintiff filed her motion for allowance of attorney's fee, specifying therein that the

same was for the prosecution of the first and fourth (or double damage) counts of the petition. There was not, and could not be, any claim for attorney's fee on the third count for single damages for overflow of land. Over the objections of the defendant, the court (a jury being waived by both parties) heard the motion to tax an attorney's fee and allowed $15, for which judgment was entered. The defendant then filed its motion to strike out the item of attorney's fee and for a new trial on that issue. The defendant's motion for new trial on the merits, and its motion to strike out the item of attorney's fee and grant a new trial on that issue, were both overruled and the defendant appealed to this court.

The sufficiency of the evidence to sustain the verdict is not questioned. The only errors assigned relate to the allowance of attorney's fee, the admission of certain testimony of plaintiff's husband, and the giving of instruction number 3 at the request of plaintiff.

The court erred in sustaining plaintiff's motion for attorney's fee. Section 2611 of the Revised Statutes of 1889 is the same as section 809 of the Revised Statutes of 1879, except in so far as the latter was amended in 1885. Prior to this amendment the section in question had two general objects: *First*, it prescribed the duty of railroads as to maintaining lawful fences, gates, and cattle guards on certain lands, and until this was complied with made them "liable in double the amount of all damages" to stock occasioned by such default. *Secondly*, it provided that, upon the failure for three months to perform such duties, "then the owners or proprietors of such lands" might perform the duties thus charged upon railroads "and have a right to sue and recover from such corporation * * * the full value of such fences, openings, gates, cattle guards or farm crossings." When the amend-

ment was made, the first portion of the original act relating to the double damage remedy for damages to stock was left untouched. The amendment was confined solely to the second portion of the original act, and, except some immaterial changes therein, consisted of an important alteration in the rights and remedies of the owners and proprietors of land for failure of the railroad corporation to construct fences, gates, openings, cattle guards or farm crossings, within a specified time. The former clause on this subject, restricting the owners and proprietors of lands in such cases to a mere recovery of the full value of the work done by them on behalf of the railroad corporation, was stricken out, and, in lieu thereof, they were entitled to recover according to the language of the amendment, which was, to wit: "Cost of such fences, openings, gates, cattle guards or repairs, together with a reasonable compensation for his time, trouble and labor in and about the construction of such fences, openings, gates or cattle guards, or the making of such repairs, together with ten per cent per annum interest from the time of the service of process upon such corporation in such suit. And in every such action, if the plaintiff recover judgment, there shall be taxed as costs against the defendant an attorney's fee, to be fixed by the court or justice before which or whom the cause may be pending, at such sum as may be a reasonable compensation for all legal services rendered for plaintiff in the case, without regard to any agreement between plaintiff and his counsel as to fees; but such fee shall not be taxed so long as any appeal taken in such case shall remain undisposed of."

By contextural position, as well as by plain meaning, the provision of the latter clause of this amendment, commencing with the words "and in every such

action," refers directly and solely to suits brought by landowners or proprietors for failure of the corporation to maintain fences, gates, openings, and cattle guards, within three months after the completion of the railroad. The clause in question did not refer to double liability for injuries to stock or cattle, as to which the original statute was left untouched by the amendment thereto in 1885. This interpretation of the amendatory act is corroborated by a reading of the original act as amended and as it now appears in the Revised Statutes of 1889, section 2611. By a reference to that section and comparison with it of the original act prior to amendment (R. S. 1879, sec. 809) it will be seen that the latter portion (which was amended) is distinct and severable from the former provisions of the act which imposed a double liability for injuries to stock and that by the latter portion of the act provision is made, in case of the failure of the corporation to fence as therein required, for the doing of such work by the landowner or proprietor, and for the maintenance by him of suits therefor, to the extent and with the remedies set forth in the amendment, *supra*. These two portions of the act in question, being distinct and each being complete in itself, do not warrant the contention that the remedies given for infraction of the latter were intended to apply to the former. In the portion of the statute referring to double damages for injuries to stock the language goes no further than to impose that degree of liability. On the contrary in the portion of the statute referring to the failure of the railroad to comply with its statutory duties in three months, the language of the statute is that the landowner, upon his performance of such duties, shall have the "right to sue," and it further defines specifically the notice to be given, the rate of interest to be recovered, and concludes by

using the terms, to wit: "And in every such action, if the plaintiff recover judgment, there shall be taxed as costs against the defendant an attorney's fee." The common rules of syntax require that this quoted language should be applied to the "right to sue" given by the statute immediately before the use of the language defining the extent of recovery. Our conclusion is, therefore, that the court erred in finding for plaintiff on the issues submitted to it as to the allowance of attorney's fee for the prosecution of the two causes of action for killing stock.

The next error assigned relates to the questions put to plaintiff's husband as to the manner in which the "pigs" were killed. The questions propounded, the objections thereto, and the answer of the witness, are, to wit:

"*Q.* Get you to state about the killing of these pigs?

"Defendant objects to testimony by this witness in regard to the killing of the hogs, because he is an incompetent witness in this case, and this matter is not a subject of agency and he is not her agent in this matter. Objections overruled, and defendant excepts at the time.

"*Q.* Get you to state when these first hogs were killed? *A.* Went out of my stable lot on the right of way, got on the track and got killed. They went through the gate on railroad track.

"*Q.* Get you to state how that gate was with regard to hogs getting under it? *A.* The gate was not hung so as to turn hogs; in fact it would not turn anything; the hook was on the outside and the hook should have been on the railroad side; anything pushing against the gate would knock the hinge out, and it was that way often, only worse. These hogs got under the gate."

Before these questions were asked the witness

testified, as it was competent for him to do, that he was his wife's agent. *Leete v. Bank*, 115 Mo. *loc. cit.* 204; *Brick Works v. Thompson*, 59 Mo. App. 99. He had also testified as to the extent of his agency, that it was full and absolute and embraced the care, custody, and feeding, of the pigs, and the cultivation and management of the farm of his wife; that the pigs were in his possession, and he "slopped" and fed them every morning. The possession of the pigs being intrusted to him in furtherance of his agency in caring for and feeding them, it can not be said that his knowledge of the injury to them was not derived from such possession. As the possession was part of his agency, the knowledge came to him in that capacity. Hence, upon proof of his agency, it was not incompetent for him to testify as to any matter connected therewith. As to any matter not connected with such agency for his wife, or as to any information not coming to him in the prosecution of his business as her agent, he would be an incompetent witness. But the objection in question only went to inquiries as to matters connected with business of protecting, caring for and retaining the custody of, the pigs as the agent of the wife; hence, it was properly overruled.

Appellant also complains of the following instruction, given by the court for plaintiff: "If the jury believe from the evidence that the defendant raised a dam or embankment, or kept or maintained a dam or embankment, across a prong of Shoal creek, and that in consequence of such dam or embankment any part of plaintiff's lands were overflowed and that plaintiff was injured thereby, or that plaintiff in consequence of said dam or embankment was damaged by loss of her potato crop in the year 1894, you will find for plaintiff on the third count of plaintiff's statement and assess her damages at any sum, not exceeding $100."

For the defendant, however, the court gave the following instruction:

"If the jury find for the plaintiff on the third count of her petition, which refers to the overflow, they should allow the fair cash value of the potato crop as it stood at the time of the overflow."

These two instructions show by their language that they qualify each other. The latter in terms directs the attention of the jury to the proposition embraced in the former; hence, they must be taken together and the generality of the first, complained of by appellant, was cured by the particularity of the latter. *Burdoin v. Town of Trenton,* 116 Mo. *loc. cit.* 372; *Easley v. Railroad,* 113 Mo. 236. This assignment of error will, therefore, be overruled.

As the issue on the allowance of the attorney's fee was distinct from the other issues in the case (*Briggs v. Railway,* 111 Mo. *loc. cit.* 174), and as it is to this issue alone that error has intervened, the judgment of the trial court will be affirmed on the merits and reversed on the issue as to the allowance of an attorney's fee. It is so ordered.

All the judges concur generally in this opinion, excepting the point which decides that the husband is a competent witness to prove his own agency for the wife in a case where he is no substantial party to the record. On that point ROMBAUER and BIGGS, JJ., file a separate concurring opinion.

ROMBAUER, P. J.—The plaintiff's husband is not a party to the record, and it would seem he was not a competent witness to prove his own agency for his wife. The amount involved, however, is very small, and there is no probability that a retrial would lead to a different result. Hence, in view of the conflict in the *dicta* of the supreme court on the point in question,

we are not justified in remanding the case for new trial, or certifying it to the supreme court. As, however, the point is one of interest, it calls for more extended notice than it has received in the preceding opinion.

Section 8918 of the Revised Statutes provides that no person shall be disqualified as a witness in any civil suit by reason of his interest in the event of the same as a witness or otherwise. The words *"or otherwise"* have been held to work a total removal of the disability of husband and wife as witnesses for or against each other, where they are substantial parties to the record, excepting testimony touching confidential communications, and a partial removal of such disability in cases falling within the provisions of section 8922, where they are not substantial parties to the record but are called to prove some business transaction done by either as the agent of the other. *Fugate v. Pierce*, 49 Mo. 441; *Moore v. Moore*, 51 Mo. 118. The question arose at an early day whether the spouses are competent witnesses in any event to prove their own agency for each other. An intimation was made by the supreme court in *Chesley v. Chesley*, 54 Mo. 347 (per SHERWOOD, J.) that they are. In that case both spouses were substantial parties to the record and the agency was shown *aliunde*, as the husband was trustee of the wife under a deed. In *Williams v. Williams*, 67 Mo. 661, the wife was no party to the record and was permitted upon the trial of the cause to prove her own agency for her husband. The supreme court, all the judges concurring, held (per HENRY, J.) that she was an incompetent witness to prove that fact. The ruling in *Chesley v. Chesley*, *supra*, was disapproved, without noticing the fact that in the former case the wife was a substantial party to the record. In the subsequent case of *Wheeler & Wilson Manufacturing Company v.*

*Tinsley*, 75 Mo. 458, the wife was no party to the record and was permitted to prove her agency for her husband, who was a party, by her own testimony. The court, per HOUGH, J., held that this could not be done, but that, before she could testify to any acts done by her as agent, the fact of her agency had to be shown *aliunde*. In this view all the judges, including SHER-WOOD, C. J., concurred. The question then arose in *Leete v. State Bank*, 115 Mo. 184, where both husband and wife were substantial parties to the record, and there the supreme court (division two, per SHERWOOD, J.) held that the husband was a competent witness to prove his own agency, and incidentally disapproved of the rulings in *Williams v. Williams* and *Manufacturing Company v. Tinsley*, without noticing the fact that in those cases the spouse testifying was not a party to the record.

It will be thus seen that the conflict in the decisions of the supreme court is a mere conflict of *dicta*, and not a conflict of decisions on the point in judgment. In *Chesley v. Chesley* and *Leete v. State Bank*, the spouse called upon to testify was a substantial party to the record, and hence a competent witness for all purposes. Hence there is no obvious reason why the witness should not prove the fact of his own agency as well as any other fact. The witness was qualified by the construction placed upon section 8918. In the two other cases, however, the spouse was not a substantial party to the record, and hence was disqualified by the provisions of section 8922. In my view there is no necessary conflict between these decisions, and all the cases, considering the point in judgment, were correctly decided.

It seems to be plain that the proof of agency is not proof of an act done in the transaction of business as agent but proof of an anterior fact, and hence one spouse

can not prove his or her own agency for the other, except where the spouse so testifying is a substantial party to the record and, by reason of that fact, a competent witness for all purposes. We made an intimation to the contrary in *Hill Press Brick Works v. Thompson*, 59 Mo. App. 98. There, however, the point did not necessarily arise for decision, as there was other evidence of agency, and therefore the question was not fully considered. In the foregoing views Judge BIGGS concurs.