FLECKENSTEIN, Receiver SOUTH WEBSTER IN-VESTMENT COMPANY, Appellant, v. WATERS et al.

**Division One, March 12, 1901.**

Fraud: BUYING LAND FOR SPECULATION. Sessions, a promoter, through others bought land for $12,000, of which sum $9,500 went to the owner, and $2,500 to the intermediaries, the property being conveyed, to be held in trust, to Johnson, who executed his deed of trust to Reyburn to secure his note for $12,000, the money which paid for the land. Afterwards, Sessions sold to William and Frank Waters each an undivided third interest in the land for $2,300, paid him by each, and then a corporation, with a capital of $2,800, consisting of 56 shares of $50 each, was formed with Sessions, Frank and William Waters, and others as incorporators, and Johnson conveyed the land, subject to the deed of trust, to this company, for the expressed consideration of $25,200, the actual consideration being the assumption of the mortgage debt and interest, $2,500 of the capital stock and two company notes of $5,350 each, which were indorsed by Johnson to Sessions and the Waters brothers, and by them indorsed and sold for their face value, and the proceeds equally divided between the three. The company being unable to pay one of these notes when it became due, the Waters brothers took it up, sued thereon, obtained judgment against the company, and at execution sale William Waters became the purchaser and received a sheriff's deed for the land, and afterwards paid the company's other note, and ac-

quired his brother's interest, and also took up the Reyburn note for $12,000 at its face value, and holds that note and deed of trust for his protection, having thus paid out for his interest in the land about $20,501.11. Only $880 of the capital stock of the investment company was paid up, Sessions, Frank and William Waters, and others, who had been taken in as stockholders, paying $100 each, and each, except Sessions, afterward paying a monthly assessment of $20, and the other stockholders except Sessions and the Waters brothers, paying a second monthly assessment of $20 each. Of the $880 paid in, $134.45 went to pay expenses of incorporation, $720 paid one year's interest on the Reyburn note, and $25.55 was applied on one of the company's $5,350 notes. One of the other stockholders had a receiver appointed, and he brought suit against Sessions and the Waters brothers, asking that the sheriff's deed to Waters be set aside, the Reyburn deed of trust be cancelled, and the title be vested in the corporation and it put in possession, on the theory that they perpetrated a fraud upon the corporation by selling the land to it at an enormously fictitious value, and by their subsequent dealings, being its officers, wrecked the corporation. *Held*, that Waters could not be divested of his title except upon condition that he be reimbursed for the amounts invested by him, especially as the suit is prosecuted at the instance of a single stockholder whose entire investment in the venture was only $140.

Appeal from St. Louis County Circuit Court.—*Hon. Rudolph Hirzel*, Judge.

AFFIRMED.

*Charles Fensky* for appellant.

(1) The purchase by an officer of a corporation of corporation property at an execution sale will enure to the benefit of the corporation. McAllen v. Woodlock, 60 Mo. 174; Roberts v. Mosely, 64 Mo. 107. (2) Sessions, Johnston, Wm. D. Waters and Frank A. Waters were guilty of fraud in selling the land to the corporation at an over-valuation. Joplin Land Co. v. Case, 104 Mo. 579. (3) The judgment in favor of Wm. D. and Frank A. Waters was procured by fraud; the notes of $5,350 were made by the company without any con-

sideration, and therefore any judgment obtained by the Waters on said notes was fraudulent and void. (4) The sums of $2,300 paid to Sessions by Wm. D. and Frank A. Waters for a one-third interest each in the land was for the purpose of fraud, and they, rather than the stockholders, must lose their money. Hornblower v. Crandall, 7 Mo. App. 220. (5) The various sums paid by the two Waters to take up the notes were paid out partly to consummate their fraud, partly to avoid the results of their wrongs; none of them were expended for an honest purpose, and a court of equity will leave the parties where it finds them. Ins. Co. v. Smith, 117 Mo. 297; Edwards v. Gottschalk, 25 Mo. App. 553.

*Collins, Jamison & Chappell* for respondents.

The plaintiff, praying the aid of a court of equity, must himself do equity. Whelan v. Reilly, 61 Mo. 565; Kline v. Vogel, 90 Mo. 239; Plum v. City of Kansas, 101 Mo. 525; Phillips v. Phillips, 50 Mo. 603; Densmore Oil Co. v. Densmore, 64 Pa. 43; Simons v. Vulcan Oil & Min. Co., 61 Pa. 202; Rias App., 79 Pa. 168; Hickens v. Congreve, 1 Russ. & M. 150.

BRACE, P. J—The material facts in this case, in brief, are as follows: On the twentieth day of December, 1892, French R. Sessions, through other persons who held an option thereon, purchased from John H. Pipkin a tract of land in St. Louis county, containing 62.59 acres, for the sum of $12,000, of which Pipkin received $9,500, and the intermediaries $2,500, and caused the title to the land to be conveyed by Pipkin to Rowland L. Johnston. Sessions borrowed the $12,000 to pay for the land from Valle Reyburn, and to secure the loan, caused the said Johnston to execute his promissory note in the sum of $12,000 payable to Valle Reyburn in three years, and six semiannual interest notes for $360 each, and to exe-

cute a deed of trust on the land to secure the payment thereof.

Afterwards, in January, 1893, Sessions sold and transferred to William D. and Frank A. Waters each an undivided one-third interest in the land, subject to said deed of trust, each of them paying him therefor the sum of $2,300, and thereafter, Johnston held the equity in trust for Sessions, Frank A. Waters and William D. Waters in equal proportions. Afterwards, on the eighteenth of March, 1893, the South Webster Investment Company was incorporated with a capital stock of $2,800, divided into 56 shares of the par value of $50 per share. The incorporators and directors were French R. Sessions, William D. Waters, Edward H. Newland, Charles A. Robinson and George W. Wilson. Sessions became president and William D. Waters treasurer of the corporation. Afterwards, on the thirtieth of March, 1893, Johnston, at the instance of Sessions and the two Waters, by deed of that date, conveyed the premises subject to the Reyburn deed of trust for the expressed consideration of $25,200 to the said South Webster Investment Company; the consideration actually paid being the assumption by the corporation of the Reyburn debt of $12,000 and interest, $2,500 of its capital stock, and two promissory notes each for $5,350, payable in one and two years, respectively, secured by a deed of trust on the premises, executed by the corporation. At this time the corporation seems to have been a purely paper concern. Afterwards, in the following month of April, the sum of $700 was paid into the treasury on account of subscription to stock, $100 each by French R. Sessions, Frank A. Waters and W. D. Waters and $100 each by August Krutzborn, Mary Ostertag, R. M. Hammond and W. W. Penny, and between the twelfth of May and the eighth of June following, each of these parties except Sessions paid in $20 on account of first monthly assessment, and thereafter, in the month of June, Krutzborn, Ostertag and Hammond each paid in an additional $20, on account of second

monthly assessment; thus making the sum of $880; the whole amount paid into the treasury on account of subscriptions to stock and assessments thereon. Of this amount, $134.45 was afterwards applied to the payment of the expenses of incorporation; $720, to the payment of interest on the Reyburn debt; and $25.55 on one of the two $5,350 notes, which, upon their execution, having been indorsed by Johnston and turned over to French R. Sessions, Frank A. Waters and W. D. Waters, were severally indorsed by them, discounted for the face value thereof, and the proceeds equally divided between these three.

Upon the maturity of the $5,350 note payable at one year, the corporation failing to pay it, and it having been duly protested, the two Waters took it up, instituted suit thereon against the corporation and obtained judgment. Execution issued thereon, which was levied upon the premises, and at the sale William D. Waters became the purchaser and received a sheriff's deed therefor. Afterwards, the second note for $5,350 payable at two years becoming due, the corporation failing to pay it, the same was also duly protested and thereafter taken up by William D. Waters, who thereupon caused the deed of trust securing the payment of the two $5,350 notes to be satisfied on the margin of the record thereof.

The twelve thousand dollar note to Valle Reyburn, secured by the first deed of trust, being about to mature, William D. Waters, with money furnished by another for the purpose, took up that note and that note with the deed of trust securing the same is now being held for his protection. William D. Waters has also acquired all the interest of his brother Frank A. Waters in the premises. This was the situation, when, on the eighteenth of September, 1895, on the petition of Mary Ostertag, Howard A. Blossom was appointed receiver of the corporation, who, thereafter, on the twenty-first of December, 1896, instituted this suit. Afterwards, Blossom having re-

signed, Charles G. Fleckenstein was substituted in his place and filed the amended petition, upon which the case was submitted to the court. The gravamen of the complaint is that said Sessions being at the time the president and director, the said William D. Waters, the treasurer and a director,. and the said Frank R. Waters, a stockholder, perpetrated a fraud upon the corporation by selling the premises to it at an "enormous fictitious value," and by their subsequent dealings, with the consideration received therefor, wrecked the corporation, and the relief asked is, that the sheriff's deed to William D. Waters be set aside and annulled, that the Reyburn deed of trust for twelve thousand dollars and interest be cancelled, that the title to the land be vested in the plaintiff, that it be put in possession thereof, that all of the defendants be divested of any interest or claims against said corporation, that the said French R. Sessions, William D. Waters and Frank R. Waters be required to account for all profit made out of the purchase and sale of said real estate from themselves to the corporation, and for judgment for costs against them. The answer of defendants to the amended petition was a general denial.

The court, after hearing the evidence, on the eighth day of November, 1897, entered the following interlocutory decree: "That the deed from the South Webster Investment Company by sheriff to William D. Waters, dated second day of December, 1894, and recorded in book 76, at page 400, of the office of recorder of deeds for the county of St. Louis, Missouri, be set aside and for naught held, and the title to the real estate in said deed of trust, and in the amended petition in this case mentioned and described, be vested in the said South Webster Investment Company, provided, however, that the plaintiff herein shall, on or before the eighth day of February, 1898, file.in this cause his declaration in writing that he will assume and agree to pay the notes, together with all interest thereon, secured by deed of trust from Rowland L. Johnston to Thomas

Reyburn, trustee for Valle Reyburn, dated December 29, 1892, recorded in book 69, page 354, in the office of the recorder of deeds for the county of St. Louis, and also all sums of money expended, paid and laid out by defendants, William D. Waters and Frank A. Waters, or either of them, in the way of taxes upon said property, as well as the sum of $2,300 paid by the defendant, William D. Waters, and the sum of $2,300 paid by the defendant, Frank A. Waters, as the purchase price of two-thirds interest in said property, with interest on all of said sums.   And the court doth further order, adjudge and decree that if the plaintiff herein shall, on or before said eighth day of February, 1898, file herein such declaration in writing, that an account shall be taken herein for the purpose of ascertaining the amounts expended, paid and laid out with the interest thereon.   And the court doth further order, adjudge and decree, that if the plaintiff shall fail, on or before the eighth day of February, 1898, to file such written declaration, that then and in that case plaintiff's petition shall be dismissed."

The plaintiff thereupon filed a motion to set aside the interlocutory decree, and failing to file the written declaration therein required within the time required, on the eleventh of February, 1898, the court dismissed the plaintiff's bill, and rendered judgment in favor of the defendants for costs, from which judgment the plaintiff appeals.

French R. Sessions was the originator and promoter of this speculation.   It was entered upon in the "boom" days preceding the panic.   Those engaged in it evidently thought there was "money" in this land at the price of $12,000, and Valle Reyburn, who seems to have been a cool-headed financier, thought it good security for that amount.   The Waters brothers, also, inquiring into the matter, became satisfied that it was a promising speculation, and they paid $4,700 for two-thirds of the equity.   The plaintiff corporation was organized for the sole purpose of realizing on this speculation.   Except the

paltry sum of $880, contributed as stated, it never had any other assets. The value of its capital stock and .promissory notes was entirely dependent on the success of the venture; if it succeeded, they might be worth something; if it failed, they were worthless. The panic came; the bottom fell out; all their expectations were dashed to the ground, and the stock and notes proved to be worthless. In the meantime, however, obligations had been incurred by the indorsers of its notes that had to be met. Of these William D. Waters was the only one who seem to have been willing and able, at least he was the only one who did meet them; and in doing so, deducting the amount received by him and his brother at the discount, and the $25.55 afterwards paid on the notes out of the funds of the corporation, he was compelled to invest the further sum of $3,541.40. Thus with the $4,600 originally put in by him and his brothers, making his stake in the venture, when the principal note secured by the Reyburn deed of trust was about to mature, the sum of $8,141.11. To protect which he of course had to take up that security at a cost of $12,360. And thus, saying nothing about interest thereafter, at the time this suit was brought he had paid for the title, under which he holds the premises, the sum of $20,501.11. Of this title he is sought to be divested in this action, by the corporation of whose funds only the sum of $745.55 ever went into the venture, and at the instance of a single stockholder of whose funds only the sum of $140 ever went into the corporation. And the proposition presented on this appeal is, that this may be done and ought to have been done *without requiring that he be reimbursed for the amounts so invested by him* under the circumstances aforesaid. If we have succeeded in stating the case clearly, this proposition needs no argument.

The judgment of the circuit court is affirmed. All concur.