Ferrenbach v. Turner.

FERRENBACH *et al.*, *Appellants*, v. TURNER *et al.*

1. **St. Louis City** : PUBLIC STREETS : WELLS. The city of St. Louis has the right to abolish wells situated within the limits of its public streets.

2. ———— : WELLS : LICENSE, REVOCATION OF. The passage of an ordinance by the city, directing its street commissioner to fill up said wells, operates as a revocation of any license, express or implied, to construct the wells in the streets.

3. ———— : ————. The city can abolish said wells at the public expense, and the persons who construct them are not entitled to compensation for their loss.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*F. T. Ledergerber* and *Louis Gottschalk* for appellants.

(1) Taxpayers have the right to bring this action

and sue out an injunction. *Mathis v. Inhabitants*, 62 Mo. 504; *Newmeier v. M. & M. R. R.*, 52 Mo. 81; *Roach v. St. Louis Public Schools*, 77 Mo. 485. (2) The city of St. Louis has no right to close up wells, without due process of law. Const. of Mo., secs. 21, 22, 30, art. 2. There is a special property and franchise in wells, protected by the constitution. The adjoining property owners own to the middle of the street subject to the easement. *Everett v. City*, 46 Iowa, 67; *Clark v. Darro*, 34 Mich. 86; *River Rendering Co. v. Behr*, 77 Mo. 91; *Lowry v. Rainwater*, 70 Mo. 152. (3) And the city cannot fill up wells, at its own expense, or at the expense of the general taxpayers, but must, in the first instance, order the owners to fill them up, and only in case of their neglect so to do, can the city do it, and for the costs issue a special tax bill. Charter of City, 2 R. S. Mo., p. 1587, art. 3, clause 9; art. 6, p. 1608, secs. 2, 3, 8, 12, 14, 19; art. 12, p. 1619, secs. 3, 6, 7, 8. And this applies even to nuisances. Art. 12.

*Leverett Bell* for respondents.

(1) The powers granted the city in its charter (2 R. S., p. 1585, art. 3, sec. 26), are amply sufficient to support section two of ordinance 13,272, in question. (2) The licenses to have the wells in the street, claimed by appellants, if granted, were revocable by the city at will, and without notice, and ordinance 13,272 is a revocation. *Desloge v. Pearce*, 38 Mo. 599; *Butchers' Union Co. v. Crescent City Co.*, 111 U. S. 746. (3) No property right can exist in a well in a public street. (4) Injunction is not the proper remedy in a case of this character. The alleged damages are illusive. Measures intended to promote the public health, and which are, in their nature, governmental, and within the police power of the state, ought not to be restrained by injunction.

BLACK, J.—This was a suit to enjoin the defendants from filling up wells in the streets of St. Louis. A temporary injunction was denied, and the petition dismissed.

The plaintiffs are resident taxpayers, and commenced the suit for themselves, and all other persons similarly situated. They allege that some of the plaintiffs, and many other persons, owners of different parcels of real estate, with the consent of the city, express or implied, dug wells on their respective parcels of property, and in the sidewalks, and furnished the same with pumps, etc. That some of the wells have been in use for twenty-five years, are permanent structures, maintained at great expense by the owners, and furnish healthy and wholesome water. That the city of St. Louis passed an ordinance, the second section of which is as follows :

"Section 2. All wells, located in any of the streets, avenues, or alleys of this city, in which the public water pipe is laid, and which shall be found by the board of health to contain six, or more, grains of chlorine to a gallon of water, are hereby abolished, and the street commissioner is hereby directed to cause the same to be filled up within ninety days after the passage of this ordinance, and the cost of such work shall be paid out of the city treasury ;" and that the defendants are about to, and are, in fact, filling up the wells in pursuance of that ordinance.

It is claimed that each of the owners had a property right in his well, which cannot be taken away, destroyed or interfered with, until just compensation is made therefor, and for this reason the ordinance is void, and that the city has no right to appropriate the public funds for the purpose of filling them up. Much has been said with respect to the nature of the ownership of the property occupied by the streets. The allegations of

the petition in this regard are general only. Whether the streets were acquired by a statutory plat, by condemnation, or by common law dedication, one or all, we are not informed. It has been held, in this state, that a lot owner has a property right in the street. *Lackland v. North Mo. Ry. Co.*, 31 Mo. 180; *Hannibal Bridge Co. v. Schaubacher et al.*, 57 Mo. 584. And this, too, though the dedication was by the way of a statutory plat. *Rutherford v. Taylor et al*, 38 Mo. 315; *Price v. Thompson et al.*, 48 Mo. 361; *Thurston v. City of St. Joseph*, 51 Mo. 512. This case, though overruled in other respects, has not been in that under consideration. We do not regard it at all essential to enter into a more minute consideration of the character and extent of such rights in this case. It would be difficult so to do on the general statements of the petition. However the streets may have been acquired, the property cannot be again resumed by those making the dedication. There is no claim here that there was any express reservation, and certainly there can be none in the abutting property owners, inconsistent with the public use to which the property was appropriated.

If these wells were being filled up to accommodate the public travel on the streets there could be no question of the right of the city so to do. Indeed, the city cannot permanently contract away the streets and wharves for private purposes. *Belcher Sugar Refining Co. v. St. Louis Grain Elevator Co.*, 82 Mo. 121. But this section of the ordinance, by itself, or in connection with the other sections, shows plainly that the wells are not being filled because they obstruct the streets, but as a sanitary measure. May the city do this? The legislature represents the public at large, and has paramount authority over all public highways, no matter how acquired. This authority may be, and is, to a large extent, delegated to the city of St. Louis over the streets therein. The power to regulate the use is not limited to

a mere right of way, but it extends to all beneficial uses which the public good and convenience may, from time to time, require, as for laying gas, water, and sewer pipes, and the like. New uses are constantly arising. All these, and many others, may be made of the streets without the consent of the lot owners. Private rights must yield to them. Dillon on Mun. Corp. (3 Ed.) sec. 690. So, too, the local authorities may build reservoirs and cisterns in the streets. *West v. Bancroft*, 32 Vt. 367. All these uses are to be regarded as included in the original appropriation, and it will not do to curtail the legislative powers in these respects.

In addition to the power to open, vacate, widen, extend, pave, repair and regulate, the use of all the streets, avenues, sidewalks, alleys, wharves, public grounds and squares, the mayor and municipal assembly are authorized, by ordinance, to establish and maintain a sanitary system, to establish and enforce quarantine laws, to secure the general health of the inhabitants by any measures necessary to declare, prevent and abate nuisances on public and private property, and, finally, to pass all such ordinances as may be expedient in maintaining the peace, good government, health and welfare of the city. 2 R. S., p. 1585. None of the objects sought to be secured by municipal government are of more importance than the health of the inhabitants, and hence to that end we find such extensive powers conferred upon the defendant. It would be strange to say that the city may not go as far in the control of its streets, and the removal of objectionable structures therein, for the protection of the public health, as it may in matters of mere convenience to the inhabitants. The statement in the petition is that these wells were constructed with the consent, express or implied, of the city. This, at most, can only be construed to be a license revocable at will. We must hold that this ordinance was passed in the legitimate exercise of the powers conferred upon the

defendant. The courts ought not to interfere with municipal bodies in the legitimate exercise of those powers by which the peace, health and comfort of the inhabitants are secured. *Weil v. Ricord et al.*, 24 N. J. Eq. 169.

It stands to reason that water percolating through the earth from streets, alleys, vaults, etc., must be more or less unwholesome. As these wells are on public property, and the right to maintain them depends upon a license from the city, the revocation of which is within the legitimate powers of the city government, we hold the ordinance to be valid, and that it operated as a revocation of the license to construct these wells, whether the license was express or implied. It must follow that the plaintiffs are not entitled to compensation.

As to the power to fill up the wells at the public expense, we find nothing in the many provisions of the scheme and charter referred to, which prevents it from so doing.

The judgment is affirmed. All concur.